1   J. CHRISTOPHER JORGENSEN, ESQ.
    STATE BAR NO. 5382
2   DIANA S. ERB, ESQ.
    STATE BAR NO. 10580
3   LEWIS AND ROCA LLP
    3993 Howard Hughes Pkwy., Ste. 600
4   Las Vegas, NV 89169
    (702) 949-8200
5   (702) 949-8398/fax

6   Attorneys for Defendant Mortgage
    Electronic Registration Systems, Inc.
7

8                 UNITED STATES DISTRICT COURT

9                 FOR THE DISTRICT OF NEVADA

10  ANDREA G. SANIEL,                          Case:

11                        Plaintiff,

12       vs.
                                               **PETITION FOR REMOVAL OF CIVIL
13  RECONTRUST COMPANY; BANK OF                ACTION**
    AMERICA; COUNTRYWIDE HOME
14  LOANS; MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.;
15
                          Defendants.
16

17  TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF NEVADA:

18       The removing party, Mortgage Electronic Registration Systems, Inc. ("MERS" or

19  "Defendant"), respectfully shows:

20       1.    MERS is a Defendant in the above-entitled action.

21       2.    That the above-entitled action was commenced in the Eighth Judicial District Court
22
    of the State of Nevada, in and for the County of Clark, and is now pending in that Court under the
23
    designated Case No. A601879.
24

25       3.    Service of the summons and complaint was effectuated on Defendant on November
26
    16, 2009.
27

28       4.    This case involves claims by the Plaintiff that Defendants improperly processed,

    serviced, and transferred her home mortgage loan. Although it is difficult to determine from the

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

512115.1

Complaint exactly what the allegations against the named Defendants are, Plaintiff seems to allege that Defendants did not properly make the disclosures required by 15 U.S.C. §1601 and 12 USC §2605, TILA, RESPA and HOEPA.

This case is one of many that have recently been filed across the country by homeowners seeking to simply stall or delay foreclosure proceedings after the plaintiffs have long stopped making the required mortgage payments.

5.      Plaintiff's claims appear to be based on alleged violations of federal statutes. Defendant denies such violations.

6.      These claims are completely preempted by the provisions of the federal statutes and Plaintiff's claims must be recharacterized as federal claims for relief.

7.      Defendant is entitled to remove this action to this Court under 28 U.S.C. §1441 on the grounds that this Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1331 in that, under the complete preemption doctrine, it is an action arising under the laws of the United States, specifically the provisions of the National Bank Act and provisions of the Truth in Lending Act, 15 U.S.C. §1601 et seq., 15 U.S.C. §2601, 1602(f) and Regulation Z §226.2(a)(17).

8.      Supplemental jurisdiction of any state law claims is proper under 28 U.S.C. §§1367(a).

9.      Thirty days have not elapsed since Defendant was served with the Summons and Complaint in this action.

10.      Copies of all process, pleadings and other orders served upon Defendant are attached hereto.

11.      A true and correct copy of this Petition for Removal will be filed with the Clerk of the Eighth Judicial District Court of the State of Nevada, Department X.

WHEREFORE, Defendant prays that this action be removed.

DATED this _2_ day of December, 2009.

LEWIS AND ROCA LLP

By _____
J. CHRISTOPHER JORGENSEN, ESQ.
STATE BAR NO. 5382
DIANA S. ERB, ESQ.
STATE BAR NO. 10580
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169
Attorneys for Defendant Mortgage Electronic
Registration Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made on the _3_ day of December 2009, by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada, to the following:

Edward G. Marshall, Esq.
324 So. Third Street, #2
Las Vegas, NV 89101
Attorney for Plaintiff

_____
an employee of Lewis and Roca LLP

1   EDWARD G. MARSHALL

2   324 S. Third Street #2

3   Las Vegas, NV 89101

4   TEL (702) 384-7162   FAX (702) 3846584

5   ATTORNEY FOR PLAINTIFF

*FILED*
*OCT 1 S 2009*
CLERK OF COURT

6                          DISTRICT COURT

7                    CLARK COUNTY NEVADA

8                                      ) CASE NO: A-09-601879-C

9                                      ) DEPT. NO.        X

10   ANDREA G. SANIEL                  )

11           PLAINTIFF                 ) DATE OF HEARING: _____

12       VS.                           ) TIME OF HEARING: _____

13   RECONTRUST COMPANY                )

14   BANK OF AMERICA                   ) **COMPLAINT FOR EMERGENCY**

15   COUNTRYWIDE HOME LOANS            ) **INJUNCTIVE AND DECLARATORY**

16   MORTGAGE ELECTRONIC REGISTRATION  ) **RELIEF AND TO STAY**

17       SYSTEMS, INC.                 ) **FORECLOSURE SALE**

18           DEFENDANTS

A – 09 – 601879 – C
465786

19

20   _____ )   **ARBITRATION EXEMPT**

21                                    **TITLE TO REAL ESTATE**
     0                                **RECEIVED**
                                      OCT 16 2009
                                      CLERK OF THE COURT

1   Plaintiff sues Defendants for emergency injunctive and declaratory relief and to
2   stay an imminent foreclosure sale, and states:

3   **A. Parties and Jurisdiction**

4   A.  Plaintiff is of majority age and the property that is the subject of this
5   action is located at 6507 Coronado Canyon Avenue, Las Vegas, NV
6   89142, hereinafter referred to as "the property" and is further described
7   as Assessor's Parcel Number 161-10-512 and having a legal description
8   of Parcel I: lot 13 in Block 2 of Bonita Hills, as shown by map thereof on
9   file in Book 113 of Plats, Page 4 of the official County Records of Clark
10  County Nevada.  Parcel II:  Easements of record as shown over streets
11  and common areas.

12  B.   Defendant RECONTRUST COMPANY, hereinafter referred to as
13  "RECON" is and was at all times material hereto, on information and
14  belief, a Nevada corporation organized under the laws of the State of
15  Nevada and acting as an agent of Defendant BOA and Defendant
16  COUNTRYWIDE HOME LOANS and Defendant MERS.  The address for
17  RECON is 2380 Performance Drive, Richardson, TX 75082.

18  C. Defendant COUNTRYWIDE HOME LOANS, hereinafter referred to as
19  "COUNTRYWIDE" is the alleged "servicer" of the loan in connection with
20  a non-judicial foreclosure proceeding as to the Property. On information
21  and belief, Defendant Countrywide has no legal interest in either the
22  mortgage or the Note the subject of this action.

23  D.  Defendant BANK OF AMERICA, hereinafter referred to as BOA has
24  taken over the assets and liabilities of Defendant COUNTRYWIDE and
25  upon information and belief has no legal interest in either the mortgage or
26  the Note the subject of this action.

1

E.   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., hereinafter referred to as "MERS," is a Delaware corporation with offices located at 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474.  Upon information and belief, MERS is named solely as a nominee Beneficiary in the Deed of Trust and is not a Party of Interest in the mortgage on the property and has no legal standing related to the property.

**B. Background**

1. Defendant MERS, through its agent Defendant RECON, instituted a non-judicial foreclosure proceeding to foreclose on a mortgage as to the Property which mortgage was originally issued in the name of Defendant COUNTRYWIDE.

2. Upon information and belief, Plaintiff alleges that Defendant COUNTRYWIDE was not the lender and was only a middleman performing a service for a fee on behalf of New York based trust which sold securities to raise the capital for Plaintiff's mortgage.  According to IRS rules, the Trust cannot own the mortgage collateral in the securitization pool without incurring significant tax liability.  Plaintiff does not deny that a mortgage obligation was created, however, Plaintiff does deny that any obligation is owed to any of the Defendants in this action. Plaintiff does not know who the obligation is owed to, and Plaintiff does not know the amount of the obligation in case any Toxic Asset Relief Program (TARP) funds were applied to Plaintiff's mortgage, or other such funds as A.I.G. insurance proceeds. Upon information and belief Plaintiff alleges that Defendant COUNTRYWIDE was not in fact the Lender, and that defendant COUNTRYWIDE had no risk of loss in this loan.

3. Proof of the Current holder In Due Course has never been produced to the Plaintiff, and Defendants have failed to prove or even take the position that it is the holder of all rights under the Note, which is the instrument of indebtedness which would permit the legal holder thereof to declare a default which would trigger a foreclosure.

2

4. Further, Defendants as alleged "Trustee" for unnamed "Certificate Holders" of a series of mortgage-backed securities, has failed to demonstrate that it, and not the Certificate Holders, is the party with the true ownership interest in the Mortgage the subject of this action, or that the Certificate Holders have acceded or legally assigned their rights to and under the subject Mortgage to Defendants, specifically the right to seek a foreclosure.

5. As such, Defendants have not demonstrated that they have suffered an actual or threatened injury as a consequence of any default, which distinct and palpable injury is legally required under applicable Nevada law in order for Defendants to satisfy the legal prerequisite to prove that it has a sufficient personal stake in and legal standing to institute the foreclosure on the Property.

6. Further, there is a cloud on the title to the Property which Defendants have failed to extinguish as it has chosen to institute a non-judicial foreclosure. The cloud arises out of the filing of an action by Defendants which seeks to foreclose on the same Property which is the subject of the mortgage originally issued and funded by a New York securitization scheme.

7. Defendants have notified Plaintiff that the foreclosure sale on the Property has been scheduled to take place on Monday, October 19, 2009. .

8. This Complaint is thus being timely filed in accordance with applicable law to challenge the foreclosure prior to the issuance of any Certificate of Title following sale.    Upon information and belief, Plaintiff alleges that a severance of the ownership and possession of the original Note and Mortgage has occurred and as the true owner and holder of both the original Note and Mortgage are unknown as a result of one or more alleged assignments and the parsed sale of certain rights under the Note. Therefore, Defendants are legally precluded from foreclosing on the Property unless and until it can demonstrate full legal standing to do so.

3

## C. **Material Facts and Allegations**

9.  Plaintiff hereby incorporates all allegations of the above paragraphs 1-8 of the General Allegations and Nature of the Actions as if they were fully stated.

10.  Plaintiff is the nominal payor on the subject promissory Notes. The Defendant "Loan Sellers" are financial institutions that were paid a fee to pose as a residential mortgage lender, when in fact the source of loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties whose identities and receipt of fees and profits were withheld from Plaintiff at Closing and continue to be withheld from Plaintiff by the Defendants contrary to the requirements of Federal Law and applicable State Law.  Any reference to Lender or Lenders or Loan Seller in the ongoing

complaint is to refer to all Defendants and their agents and accomplices whether Countrywide or Washington Mutual.

11.  Unknown to Plaintiff, the Loan Seller, Defendants CWHLOANS and WAMU acting as principal in their relationships with the "independent appraiser" of the property and the mortgage broker and mortgage originator, induced the Plaintiff into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. The Loan Seller posed as a conventional mortgage lender thus leading Plaintiff to reasonably believe that the Loan Seller, the mortgage broker, and the loan originator had an interest in the success ( repayment of the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of the "closing" of the subject loan transaction.

12.  In fact, the Loan Seller, mortgage broker, appraiser, loan originator, title agent, escrow agent and Trustee on the Deed of Trust, had no financial stake (i.e., liability) in the transaction and no interest other than obtaining Plaintiff's signature on a "loan" that could almost never be repaid, contrary to representations and assurances from the conspiring participants in this fraudulent scheme. In fact, the "Appraisal" was intentionally and knowingly inflated along with other loan data to justify the closing of the "loan transaction."

4

13. Plaintiff relied upon the due diligence of the apparent "Lender" (i.e., actually the Loan Seller) in executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the sense of a true investor who had a stake in the outcome of the transaction other than earning fees.

14. Plaintiff relied upon the due diligence of the apparent "Lender" (i.e., actually the Loan Seller) in executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing.

15. Thus no bank or other financial institution actually performing under the standards, rules and regulations governing such institutions was the "lender" which is one basis for Plaintiff's complaint. to wit: that the inflated appraisal added an undisclosed cost to the loan which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan" exceeds the limits of conscience and is not subject to any exemption because the presence of a financial institution in the transaction was a ruse in which the form of the transaction covered over and misled the Plaintiff as to the real parties in interest and the fees generated by the production of the subject "loan transaction."

16. The purpose of the Defendants was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and exchange Commission which disclose the normal manner of operating this fraudulent scheme.

17. Upon information and belief, Plaintiff alleges that Defendants have ignored or refused to comply with the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Home Owners Equity Protection Act, the Federal Fair Credit Reporting Act and other Federal and State statutes and regulations, and Plaintiff reserves the right to bring suit in the future related to the violations of these statutes and regulations.

5

1    18. Plaintiff is aware of professionals who have conducted interviews with

2    witnesses and have personally observed the practices and facts alleged herein. Besides
3    the obvious theft of identity which lies at the core of the pattern of conduct defining the

4    Defendants' illegal and fraudulent scheme, it is observably obvious that the property
5    was

6    appraised improperly, never verified despite "stringent" underwriting standards imposed
7    by Government Sponsored Entities (interim investors) with which the Defendants
8    purported to comply (and did not) to wit: the appraisal report shows the fair market value
9    of the property dramatically increasing over a period of 24 months and then returning to
10   a much lower value within 48 months after the closing of the "loan" transaction.
11   Plaintiff's property was purchased in December of 2004 for a little over $600,000 and
12   today and for some time has probably been worth only approximately $300,000 if one
13   could find a wiling buyer in today's now deflated market which is probably closer to what
14   the true value was in 2004.

15    19. Further, the appraisal raises questions of value that indicate an inflated value.

16    20. The Loan Seller was named as the Lender on the subject promissory note
17   and under the mortgage terms allegedly securing the performance under the subject
18   note. The "Trustee" was named as the Trustee on the Deed of Trust executed at the
19   time of the alleged "closing" of the "loan transaction." In accordance with State law, the
20   Deed and terms of security were recorded in the county records allegedly in violation of
21   NRS 205.395 which prohibits recording of a fraudulent document. Defendant knew at
22   the time that the loan was made that there was fraud involved because Defendant was
23   not the real "lender" or investor in the loan. The real lender or investor was the
24   purchaser of securities from a Wall Street securitized loan pool which was not licensed
25   to loan mortgage money in the State of Nevada which is a violation of NRS 645B.900.

26    21. Notwithstanding the above, and without the knowledge of the Plaintiff, the
27   Loan Seller had entered into Assignment and Assumption Agreements with one or more
28   parties and Pooling and Service Agreements with one or more parties including but not

6

1    limited to the mortgage aggregator prior to or contemporaneously with the "Closing" of
2    the subject "loan

3    transaction." Defendants do not have the note, and are not the holder in due course of
4    the note. Therefore defendants do not meet the definition of a "Lender" as stated in
5    NRS 598D.050. Consequently, all notices of default and acceleration of debt are invalid
6    since they were not received form a true party of interest. Therefore any procedural
7    process has not been met according to Nevada law, NRS 107.080 which states that
8    notices are required from a party holding a lien. In this case none of the parties are
9    holding the lien, i.e. the note, or encumbrance. In this present case the Beneficiary is
10   named as MERS which is not a party of interest in the subject property. More will be
11   said about this further on in this complaint.

12       22. Under the terms of these agreements, the Loan Seller received a sum of
13   money,

14   usually on receiving an application for a loan equal to the gross amount of the loan

15   sought by Plaintiff plus a fee of 2.5% or more which was allocated to the subject loan

16   transaction. This fee was not disclosed to Plaintiff.

17       23. Contrary to the documents presented before and during the "closing" of the
18   "loan

19   transaction" the Loan Seller was neither the source of funding nor the "Lender."

20       24. Thus at the time of recording, the source of funding and the "Lender" was a
21   different

22   entity than the nominal mortgagee or beneficiary under the deed of trust and was

23   neither named nor disclosed in any fashion which is a violation of NRS 205.395.

24       25. The security for the "loan" thus secured an obligation that had been paid in
25   full by a

7

1    third party. Said third party(ies) was acting as a financial institution or "Lender"

2    without even having been chartered or registered to do so despite regulations to the

3    contrary from laws and rules of State as written in NRS 645B.900

4        26.  Some form of documentation represented by the Loan Seller to the

5    Mortgage Aggregator was presented before or contemporaneously with the "closing" of

6    the loan" transaction.  In some cases the documentation included actual copies of the

7    documents presented at "Closing."

8        27. In most cases it consisted of either forged blank notes or vague descriptions

9    of the content of the notes that were placed into the pool of assets that would be

10   "securitized."

11       28. Plaintiff has discovered numerous cases in which the "loan closing" either did

12   not take place at all or included documentation substantially different than the original

13   offer and acceptance and substantially different than what could have been reported to

14   the Mortgage Aggregator prior to the "closing." Plaintiff has discovered numerous cases

15   in which foreclosure has proceeded despite the fact that no loan closing was ever

16   consummated, no papers were ever signed, or the loans were properly rescinded

17   properly under law.  For example, Wells Fargo Mortgage has forwarded application for

18   mortgage to Mortgage Pool Managers.  Even though the mortgages were never closed

19   as solid business, Wells has tried to foreclose more than once on loans it never made.

20       29.Plaintiff does not know what version of documentation was presented to the

21   Mortgage Aggregator and if the Mortgage Aggregator took one or more varying

22   descriptions of the alleged "loan documents" into more than one pool of assets which

23   was eventually sold for the purpose of securitizing the assets of the pool which included

24   the subject loan transaction either once or more than once. Plaintiff has not been able to

25   obtain such information and is under the impression that the Defendants treat their

26   "borrowers" with complete silence and defiance or obfuscation.

27       30 .There is no assignment of the subject mortgage in the county records, but

28   there may be a non-recorded Pooling and Services" Agreement and a non-recorded

8

1   Assignment and Assumption Agreement which appears to substitute the Trustee over
2   the pooled assets for the nominal Trustee in the Deed of Trust.  This may be a violation
3   of Covenant 9. of NRS 107 which requires any change of Trustee, such as a
4   substitution, to be effectuated by a Corporate Resolution of the Board of Directors of the
5   Beneficiary, and that Corporate Resolution with Seal to be recorded in the records of
6   the County Recorder.  Without such any substitution is not effectuated.

7       31. The powers of this second Trustee were in turn transferred to either a
8   Trustee for a Special Investment Vehicle (which performed the accounting and reporting
9   of the pool assets) or to an investment bank Collateral Debt Obligation manager whose
10  department performed the accounting and reporting of the pool assets.

11      32. The reporting of the pool assets consisted principally of descriptions of the
12  notes "signed" by borrowers and limited descriptions of the general terms of the note
13  such that the note appeared to be more valuable than the initial terms of payment by the
14  "borrower."

15      33. The note from the subject "loan transaction" was eventually allocated into a
16  new corporation (Special Purpose Vehicle) formed for the express purpose of holding
17  the pooled assets under certain terms.

18      34. The terms included the allocation of payments from one note to pay any
19  deficiency in payment of another note in unrelated "loan transactions" contrary to the
20  terms of each such note which required payments to be allocated to the principal,
21  interest, escrow and fees associated with only that specific "loan transaction."  This is
22  referred to as cross collateralization, but was never disclosed to the Plaintiff before
23  closing.

24      35. Whether such "deficiency" was caused by the difference between the higher
25  general terms of description of the note or the lower actual payment requirements from
26  the "borrower" is not known, despite numerous requests for accounting and the refusal
27  of Defendants to provide any such information.

9

36. The investment banking firm arranged through payment for a false inflated appraisal of the certificates and/or issuer of the certificates that would be sold to investors in much the same way as it had procured the false appraisal of the property that "secured" the "loan transaction." In addition, insurance was purchased from proceeds of this transaction, credit default swaps were purchased from proceeds of this transaction, the investors' investments were "oversold" to create a reserve pool from which the SPV could pay deficiencies in payments, and the SPV created cross-collateralization agreements and overcollateralization of the pool assets to assure payments to the investors, thus creating co-obligors on the payment stream due from the Plaintiff on the subject "loan transaction." The fact that Plaintiff's loan was involved in a cross collateralization process whereby some of Plaintiff's monthly payments could be used to pay the loans of other Borrowers was never disclosed to Plaintiff. This was fraud by omission. Had this been disclosed to Plaintiff, Plaintiff would have never agreed to such an arrangement.

37. The pool assets, including the Plaintiff's subject "loan transaction" were pledged completely to the owners of the "asset-backed securities." All the certificates were then transferred to a Seller who in turn sold the certificates in varying denominations, each of which had slightly different terms depending upon which segment of the pool (tranche) secured the investment.

38. If there is a holder in due course of the Plaintiff's note arising from the subject "loan transaction" it is the investors who purchased said securities (certificates). Some of said securities are held by the original purchaser thereof, others were sold at weekly auction markets, others were paid by re-sales of property that was "secured", others were paid from pre-payments, others were paid by sale at full or partial price to the investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as nonrecourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment of the pool that secured the relevant investor who owned certificates backed by a pool of assets that included the subject "loan transaction." Plaintiff has no idea who is the true holder in due course of the note

10

1  related to the property of Plaintiff. Even though Plaintiff has requested this information
2  from Defendants, they have not complied with the request of Plaintiff.

3     39. It is doubtful that any of the Defendants have any knowledge or have made
4  any effort to determine whether the putative holders in due course have been paid in
5  whole or in part. It can only be said with certainty that these Defendants seek to enforce
6  loan documents for which they have already been paid in full plus illegal fees for
7  participating in an illegal scheme. These Defendants seek to add insult to injury by
8  demanding ownership of the property in addition to already receiving full payment in full
9  long before any delinquency or default even allegedly occurred.

10    40. In order for these Defendants to maintain legal standing in connection with
11 the subject loan transaction they are required to show the entire chain of title of the note
12 and the entire chain of title of the mortgage. The plaintiff believes defendants are unable
13 to show entire chain of title leading Plaintiff to conclude that the Defendants cannot
14 produce such evidence of a complete chain of title or are intentionally withholding the
15 information that would show breaks in such chain. Again, NRS 107 Covenant 9
16 precludes the Defendants from making changes on the alleged loan without recording
17 the corporate resolution and seal of the beneficiary.

18    41. Plaintiff is left in the position of being in an adversary proceeding with ghosts.
19 While these Defendants have informally offered or considered providing indemnification
20 for any third party claims, the fact remains that any relief awarded these defendants,
21 any standing allowed to these defendants would expose the Plaintiff to multiple claims
22 and suits from an unknown number of parties and entities that all claim, possibly
23 correctly, to the holders in due course. This would place Plaintiff in an untenable
24 position of DOUBLE OR MULTIPLE  FINANCIAL JEOPARY. Any grant of a certificate
25 of title to an entity other than Plaintiff or the nominal mortgagee creates an incurable
26 defect in title.   .

27    42. There is no recording of any document in the county records which predates
28 the Defendants' attempt to initiate foreclosure and/or eviction or which would authorize
29 them to proceed. See **Exhibit A** which is a simple diagram depicting the numbers of

11

1   parties involved in the securitization process. However under the Doctrine of a Single
2   Transaction, there are only two parties of interest in any mortgage. Those two parties
3   are the Investor and the Borrower. All the other parties are simply middle men who
4   have performed a service for a fee, but are not interested parties, and therefore have no
5   standing in court to bring an action.

6   43. The end result of the false and misleading representations and material
7   omissions of the Defendants as to the true nature of the mortgage loan actually being
8   processed, which said Defendants had actual knowledge of, was in direct conflict with
9   the original Uniform Residential Loan Application, preliminary Truth in Lending
10  Statement, and Plaintiff's stated intentions and directions to said Defendants at the time
11  of the original application for the fraudulent loan.

12  44. At no time whatsoever did Defendants ever advise Plaintiff (nor, as far as
13  Plaintiff can determine, any "investor" in certificates of mortgage-backed securities) that:

14  A. The mortgage loan being processed was not in Plaintiff's best interest;

15  B. The terms of the mortgage loan being processed were less favorable than the
16  fixed-rate loan which Defendants previously advised Plaintiff he qualified for which was
17  a 15% down fixed payment mortgage. Only at the last minute was Plaintiff's mortgage
18  "switched" by Defendants to a 10% down with a negative amortizing loan that added
19  over $15,000 per year to the principal. There was little chance of this type of loan ever
20  being paid off short of winning a lottery.

21  C. That the mortgage loan was an inter-temporal transaction (transaction where
22  terms,

23  risks, or provisions at the commencement of the transaction differ at a later time) on

24  which Plaintiff was providing cover for Defendants' illegal activities.

25  D. That Plaintiff would likely be placed in a position of default, foreclosure, and
26  deficiency judgment regardless of whether he met his loan obligations once the true
27  lender or true holder(s) in due course appeared;

12

1    E. That the originating "lender", that being Defendants and/or undisclosed third
2    parties, had no intention of retaining ownership interest in the mortgage loan or fully
3    servicing same and in fact may have and probable had already pre-sold the loan, prior
4    to closing, to a third party mortgage aggregator pursuant to previously executed
5    documentation (Assumption and assignment Agreement, Pooling Services Agreement,
6    etc. all executed prior to Plaintiff's "loan Closing."

7    F. That the mortgage loan was actually intended to be repeatedly sold and
8    assigned to multiple third parties, including one or more mortgage aggregators and
9    investment bankers (including but not limited to Defendants DOES 1-10), for the
10   ultimate purpose of bundling the Plaintiff's mortgage with hundreds or perhaps
11   thousands of others as part of a companion, support, or other tranche in connection with
12   the creation of a REMIC security known as a Collateralized Mortgage Obligation
13   ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm
14   (and which in fact ended up as collateral for Asset-Backed Securities Certificates,
15   created the same year as the closing);

16   G. That the mortgage instrument and Promissory Note may be sold, transferred,
17   or assigned separately to separate third parties so that the later "holder" of theNote may
18   not be in privity with or have the legal right to foreclose in the event of default.

19   H. That in connection with the multiple down line resale and assignment of the
20   mortgage and Promissory Note that assignees or purchasers of the Note may make
21   "pay-downs"against the Note which may effect the true amount owed by the Plaintiff on
22   the Note.

23   I. That a successive assignee or purchaser of the Note and Mortgage may not,
24   upon assignment or purchase, unilaterally impose property insurance requirements
25   different from those imposed as a condition of the original loan (also known as
26   prohibition against increased forced-placed coverage) without the Plaintiff' prior notice
27   and consent.

28   J. As a result of the closing and in connection therewith, Defendants placed the
29   Plaintiff into a pool of a sub-prime adjustable rate mortgage programs, with Defendants

13

1  intentionally misleading Plaintiff and the other borrowers and engaging in material
2  omissions by failing to disclose to Plaintiff and other borrowers the fact that the nature of
3  the mortgage loan applications had been materially changed without Plaintiff's
4  knowledge or consent, and that Plaintiff was being placed into a pool where the usual
5  loan was an adjustable rate mortgage program despite borrower not being fully qualified
6  for such a program.

7  45. Prior to the closing, Defendants and/or undisclosed third parties failed to
8  provide to Plaintiff the preliminary disclosures required by the Truth-In-Lending Act
9  pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec. 226.17
10 and 18, and failed to provide the preliminary disclosures required by the Real Estate
11 Settlement Procedures Act ("RESPA") pursuant to 24 CFR sec. 3500.6 and 35007,
12 otherwise known as the GFE.

13 46. Defendants and/or undisclosed third parties also intentionally failed and/or
14 refused to provide Plaintiff with various disclosures which would indicate to the Plaintiff
15 that the consumer credit contract entered into was void, illegal, and predatory in nature
16 due in part to the fact that the final TIL showed a "fixed rate" schedule of payments, but
17 did not provide the proper disclosures of the actual contractually-due amounts and
18 rates.

19 47. Defendants failed and/or refused to provide a HUD-1 Settlement Statement
20 at the closing which reflected the true cost of the consumer credit transaction. As
21 Defendants failed to provide an accurate GFE or Itemization of Amount Financed
22 ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP", which is required
23 to be disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of
24 the loan.

25 48. As a direct and proximate result of these failures to disclose as required by
26 the Truth-In-Lending Act, Defendants received a YSP in a substantial amount of without
27 preliminary disclosure, which is a *per se* violation of 12 CFR sec. 226.4(a), 226.17 and
28 18(d) and (c)(1)(iii). The YSP raised the interest rate which was completely unknown or
29 approved by the Plaintiff, as he did not received the required GFE or IOAF.

14

1    49. In addition, the completely undisclosed YSP was not disclosed by Defendant
2  in their broker contract, which contract was blank in the area as to fees to be paid to
3  Defendant. This is an illegal kickback in violation of 12 USC sec. 2607 as well as State
4  law which gives rise to all damages claims for all combined broker fees, costs, and
5  attorneys' fees.

6    50. The Amount Financed within the TIL is also understated which is a material
7  violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as the
8  Amount Financed must be completely accurate with no tolerance.

9    51. Defendants were under numerous legal obligations as fiduciaries and had the
10  responsibility for overseeing the purported loan consummation to insure that the
11  consummation was legal, proper, and that Plaintiff received all legally required
12  disclosures pursuant to the Truth-In- Lending Act and RESPA both before and after the
13  closing.

14    52. Plaintiff, not being in the consumer lending, mortgage broker, or residential
15  loan business, reasonably relied upon the Defendants to insure that the consumer credit
16  transaction was legal, proper, and complied with all applicable laws, rules, and
17  Regulations.

18    53. At all times relevant hereto, Defendants regularly extended or offered to
19  extend consumer credit for which a finance charge is or may be imposed or which, by
20  written agreement, is payable in more than four (4) installments and was initially
21  payable to the person the subject of the transaction, rendering Defendants "creditors"
22  within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z
23  sec. 226.2 (a)(17).

24    54. At the closing of the subject "loan transaction", Plaintiff executed Promissory
25  Notes and Security Agreements in favor of Defendants as aforesaid. These
26  transactions, designated by Defendants as a Loan, extended consumer credit which
27  was subject to a finance charge and which was initially payable to the Defendants.

15

55. As part of the consumer credit transaction the subject of the closing, Defendants retained a security interest in the subject property which was Plaintiff's principal residential dwelling.

56. Defendants engaged in a pattern and practice of defrauding Plaintiff in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees.

57. At all times material Defendants had actual knowledge that the Plaintiff' accounts were not accurate but that Plaintiff would make further payments based on Defendants' inaccurate accounts.

58. Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff' accounts.

59. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.

60. Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

61. Defendants' violations were all material in nature under the Truth-In-Lending Act.

62. Said violations, in addition to the fact that Plaintiff did not properly receive Notices of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a legal basis for and legally extend Plaintiff' right to exercise the remedy of rescission, and Plaintiff reserves the right to pursue damages under a separate suit for these violations of Federal law but does hereby pursue violations under Nevada State law.

63. Defendants assigned or attempted to assign the Note and mortgage to parties who did not take these instruments in good faith or without notice that the instruments were invalid or that Plaintiff had a claim in recoupment. Pursuant to Nevada

16

1  Uniform Commercial Code, sec. 104.3302,  Defendants are not a holder in due course
2  and are thus liable to Plaintiff, individually, jointly and severally.

3  64. On information and belief and given that the consumer credit transaction was
4  an intertemporal transaction with multiple assignments as part of an aggregation and
5  the creation of a REMIC  (real estate mortgage investment conduit) tranche itself a part
6  of a predetermined and identifiable CMO, all Defendants shared in the illegal proceeds
7  of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds
8  of the loan; acted in concert to wrongfully deprive the Plaintiff of his residence; acted in
9  concert and conspiracy to essentially steal the Plaintiff's  home and/or convert the
10 Plaintiff's  home without providing Plaintiff reasonably equivalent value in exchange; and
11 have conducted an illegal enterprise within the meaning of the Nevada State RICO
12 statute, NRS 207.470 and NRS 207.390.

13 65. On information and belief and given the volume of residential loan
14 transactions solicited and processed by the Defendants, the Defendants have engaged
15 in two or more instances of racketeering activity involving different victims but utilizing
16 the same method, means, mode, operation, and enterprise with the same intended
17 result.

18 66.  Upon information and belief, Defendants typically steered unwary borrowers
19 into subprime mortgages even when they might have been qualified for a prime
20 mortgage.  This was done because Countrywide and Washington Mutual earned more
21 money from the Wall Street aggregators with a mortgage that had an economic interest
22 rate adjustment "pop" to provide more revenue and bring a higher selling price to an
23 investor.

24 67.  Upon information and belief, consequently, the Defendants paid higher
25 commissions to its agent to sell subprime mortgages that were in most cases destined
26 to failure and default.

27 68.  Upon information and belief, executives of Defendants were aware of this
28 and continued the practice to make more profit without regard for the best interest of the
29 borrower.  Even so, agents of Defendants were trained with scripts to tell customers that

17

1   they want to get "the best loan" for the customer.  In Plaintiff's case he was steered into
2   a negative amortizing adjustable interest rate loan.  This type of loan can almost never
3   be paid off.

4       69.  Upon information and belief, Plaintiff alleges that many of these loans were
5   engineered so that they would default to promote more refinancing, and more fees at
6   the expense of the borrowers.  Additionally, with credit default swaps, and other
7   derivative financing, Defendants could make even more money on loans that defaulted
8   than on those that remained current.

9       70.  Upon information and belief, Defendants did not disclose to borrowers that
10   they planned to sell the loans, and therefore had no economic interest in the longevity
11   and success of the loan beyond the closing itself.

12       71.  By June 3, 2007, twenty-five percent (25%) of Defendants loans were
13   delinquent.  Even in 2004, Defendant manager, Adam Michaelson, advised that the
14   predatory lending practices of the Defendant would likely result in a real estate crash of
15   significant nationwide magnitude, aggravated and sustained by defaults relative to
16   which borrowers would be unable to obtain refinancing.

17       72.  NRS 205.372 (1) (a) protects the consumer from mortgage fraud where the
18   lender commits fraud by misrepresentation or concealment of a material fact.

19       73.  NRS 205.372 (1) (b) states that it is a violation for the lender to use the result
20   from (a) and to (c) receive proceeds from the transaction and (d) to conspire with
21   another person to violate (a) through (d) and in subsection (e) it is a violation to file a
22   document with the County Recorder that includes a misrepresentation or a concealment
23   of a material fact.

24       74.  The Statute calls this behavior a Class C Felony and calls for fines of up to
25   10 years in jail and $10,000 or both for every infraction.

26       75.  Section 2 of the same statute states if there is a pattern of such behavior as
27   there was with the Defendants in this case, then it is to be considered a Class B Felony
28   with up to 20 years in jail and up to $50,000 fine for each infraction.

18

1    76. Section 3 of this same statute says that each infraction is to be treated as a
2    separate violation, and carrying all the penalties for each violation.

3    77. Section 4 of NRS 205.372 states that a loan can be rescinded within six (6)
4    months of conviction of a violation under this statute.

5    78. Upon information and belief, Plaintiff alleges that Defendants are in violation
6    of all the above referenced statutes, not only with the Plaintiff, but with numerous other
7    Nevadans during the same time period numbering into the thousands who have also
8    been defrauded.

9    79. Upon information and belief, Defendants used a computer based
10   underwriting system referred to as "CLUES" which was insufficient to legitimately qualify
11   a borrower for a loan.

12   80. NRS 598D.100 has codified Nevada law and has made it illegal under
13   subsection (c) as an unfair lending practice to make a "no doc" (no documentation) loan
14   and under section (e) to make a "stated income" loan where the income of the Borrower
15   is not evaluated.

16   81. Defendants violated Plaintiff's rights by making an unfair loan that Plaintiff
17   was not qualified for, and which Plaintiff was not able to repay regardless of Defendants
18   assurances that refinancing would be available even when Defendant had no stake in
19   the loan of Plaintiff. Defendant was only interested in making fees for closing the loan.

20   82. NRS 598D.110 states that a lender who willfully engages in an unfair lending
21   practice described in this chapter such as mentioned above, then the lender is liable to
22   the borrower in an amount equal to the sum of: 2 (a), three times the amount of any
23   actual damage sustained by the borrower, and 2(b), the costs of the borrower bringing
24   the action and reasonable attorney fees. Here, by Defendants knowing willful
25   participation in the securitization scheme including fraudulent appraisal inflation, the
26   Plaintiff can show he has lost at least an amount equal to $300,000 which when
27   multiplied by 3 equals $900,000.00 without counting the amount of equity that Plaintiff

19

1    invested in the property as down payment and closing cost, and monthly payments,
2    taxes, HOA dues, insurance, etc.

3                              **First Cause of Action**

4                    **1. Misrepresentation and Fraud by Omission**

5        83.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 82
6    inclusive as well as all other paragraphs herein as though the same were fully stated.

7        84.  The corporate  Defendants, their executives, employees, and agents
8    committed fraud in direct violation of NRS 205.372 by failing to disclose to the Plaintiff
9    the predatory, unethical and unsound and unfair lending and foreclosure practices, and
10   bonuses and inflated salaries paid pursuant thereto.  Defendants were possessed of
11   such duty to make such disclose.  The facts which Defendants failed to disclose were
12   material to the mortgage documents, and to the Plaintiff's informed right to rescind.
13   Defendants knew, and should have known, if these facts had been disclosed, Plaintiff
14   would not have executed the subject mortgage documents and would have ceased to
15   rely upon Defendants integrity and good faith.  Plaintiff had he been fully informed would
16   have rescinded.  Defendants assiduously cultivated reliance upon its alleged integrity
17   and good faith through years of advertising--which falsely portrayed Defendants as
18   bastions of honesty and as possessing high minded motives to assist American and
19   Nevadan home buyers.  Defendants lied.  Defendant continued to fail to disclose these
20   material facts for instance, continued to receive mortgage payments even after
21   Defendant Bank of America acquired Countrywide and Chase acquired Washington
22   Mutual.  Defendants continue to solicit business from the Plaintiff as recently as
23   September of 2009 when Defendants attempted to entice Plaintiff into refinancing yet
24   again.

25       85.  Plaintiff relied upon the malicious and false misrepresentations of the
26   Defendants and Plaintiff was entitled to rely upon the misrepresentations of the
27   Defendants.  Defendants knew that their behavior was not in the best interest of the
28   Plaintiff and Defendants knowingly took Plaintiff down a path of economic turmoil,
29   suffering, and loss.

20

1    86. Defendants failed to disclose their predatory, unsound, unfair lending
2    practices, and Plaintiff by reliance upon Defendants has been damaged by such and
3    continues to suffer damage today. Plaintiff has suffered a loss of $125,000 minimum
4    from the time Plaintiff purchased the property, and a loss of $150,000 from the height in
5    the inflated market in 2006. Plaintiff has suffered the loss of equity and the loss of
6    good credit record before the present debacle began to unwind in 2006 and 2007

7                          **Second Cause of Action**

8                              **2. Quiet Title**

9    87. Plaintiff hereby incorporates all the allegations of paragraphs 1- 86 inclusive
10   and all other paragraphs, as though the same were fully stated herein.

11   88. The title to Plaintiff's property is clouded. That is, the Defendants or some
12   other Defendant, named or unnamed which acted in concert with Defendants, or at
13   Defendants' request or direction recorded a deed of trust, or some other documents
14   which indicate at least one of the defendants possess a security interest.

15   89. Plaintiff has recorded a "Notice of Lis Pendens" with the Clark County
16   Recorder and provided a copy of said notice to Defendants via fax and Service of
17   Process. Plaintiff thereby provided Defendants and others with formal notice as to the
18   defective character of the Defendant's claims.

19   90. Plaintiff is unaware who the actual holders in due course are and the known
20   Defendants have failed to produce a note showing they have an interest in the property
21   with proper evidence of chain of title from start to present.

22   91. Plaintiff has clean hands and has behaved in an equitable manner.
23   Defendants have dirty hands and have not behaved in an equitable manner.
24   Defendants effected sever harm on Plaintiff. Cleansing title would not result in any
25   unjust enrichment of Plaintiff, as Plaintiff has suffered damage in the amount of
26   approximately $250,000.00. This amount is subject to being trebled pursuant to
27   Nevada's anti-racketeering statutes. The amount owed by Defendants therefore
28   exceeds any amount ostensibly owed per the Deed of Trust.

21

1      92. As a direct and proximate result, Plaintiff has been injured and damaged as

2   described herein. Plaintiff is entitled to Clean Title. Any interest possessed of claimed

3   by Defendants, or any entity acting in concert with the Defendants should be

4   extinguished.

5      93. Plaintiff demands by this complaint that the Deed of Trust must be rescinded

6   and the subject loan transaction be canceled since the note has been severed from the

7   Mortgage.

8      94. Plaintiff is entitled to quiet title against subject Defendants, and clearing title

9   of the purported subject mortgage encumbrance.

10      95. Plaintiff therefore seeks a declaration from this Court that the title to the

11   subject property is vested in Plaintiff alone, and that the Defendants herein, each of

12   them, be declared to have no estate, right, title, or interest in the subject property and

13   that said Defendants and each of them, be forever enjoined from asserting any estate,

14   right, title, or interest in the subject property adverse to the Plaintiff herein. Plaintiff

15   respectfully requests that the Court would issue an Order Compelling Defendants, and

16   each of them, to transfer or release legal title and alleged encumbrances thereon and

17   possession of the subject property to Plaintiff herein, and grant Plaintiff a judgment

18   forever enjoining said Defendants, and each of them, from ever claiming any estate,

19   right, title, or interest in the subject property, and for other such relief as the Court may

20   deem proper and grant.

21               **Third Cause of Action**

22        **3. Contractual Breach of Duty of Good Faith and Fair Dealing**

23      96. Plaintiff hereby incorporates all the allegations of paragraphs 1- 95 inclusive

24   and all other paragraphs, as though the same were fully stated herein.

25      97. Defendants owed to Plaintiff a contractual duty of good faith and fair dealing

26   and a duty to restrain from frustrating the purposes of the mortgage contract.

27   Defendants directly assumed this duty and also by implication, which render the

28   Defendants subject to suit, both in contract and in tort. This duty is implicit to all

22

1   mortgage contracts. Mutuality of obligation existed per the subject contracts.
2   Defendants' conduct violates the pubic policy of the State of Nevada by forcing
3   mortgagors to strictly adhere to contracts that the Defendant mortgagees have
4   breached. Thousands of citizens of the State of Nevada have and are continuing to
5   lose their homes while Defendants, if not prevented by this Court, will continue to reap ill
6   gotten gains by defrauding Nevadans and wrongly evicting Nevadans from their homes.

7       98. Defendants breached this duty by engaging in predatory, unethical, and
8   unfair, and unsound lending practices relative to other persons, e.g., members of
9   statutorily protected classes of persons, and by failing to timely disclose these practices.
10  Defendant BOA has ratified Defendant COUNTRYWIDE'S conduct  by failing to
11  disclose material facts as per NRS 205.372 and failing to ensure that the disclosures
12  are now made. Now Defendants are attempting to reap enormous unjust profits by
13  stealing homes from Nevadans through wrongful foreclosure actions.

14      99. Since Plaintiff is not a mortgage banker or mortgage lender, Plaintiff relied
15  upon the material misrepresentations and omissions and concealment of material facts
16  by the Defendants. Had Plaintiff had this information disclosed to him, Plaintiff would
17  not have executed the mortgage documents.

18      100. Plaintiff has been severely damaged as a direct and proximate result of the
19  malicious unlawful and unfair conduct of the Defendants.

20

21                    **Fourth Cause of Action**

22      **4. Tortious Breach of the Implied Duty of Good Faith and Fair Dealing**

23      101. Plaintiff hereby incorporates all the allegations of paragraphs 1- 100
24  inclusive and all other paragraphs, as though the same were fully stated herein.

25      102. Defendants breached the implied duty of good faith and fair dealing
26  attendant to the subject contract in a tortuous manner.  Defendants, by virtue of the trust
27  reposed by Plaintiff, are liable in tort.

23

1    103. As a direct and proximate result Plaintiff has been harmed as described
2    herein.

3                              **Fifth Cause of Action**

4                              **5. Civil Conspiracy**

5    104. Plaintiff hereby incorporates all the allegations of paragraphs 1- 103
6    inclusive and all other paragraphs, as though the same were fully stated herein.

7    105. Defendants entered into a conspiracy with other members of MERS,
8    including the other named corporate Defendants for the common purpose of accruing
9    economic gains for themselves at the expense of the Plaintiff and other Nevada
10   mortgagors. The actions of the Defendants were committed intentionally, willfully, and
11   wantonly, and with reckless disregard for the rights of the Plaintiff. This conspiracy has
12   been ratified, and participated in by Defendant BOA by failing to inform Plaintiff and
13   other Nevada mortgagors of their rights and continuing to collect monies and
14   communicate with the Plaintiff and other mortgagors based on the false premise that
15   fraud by omission has not occurred. Defendants continue to illegally steal homes and
16   eject Nevadans from their homes notwithstanding knowledge of their own illegal
17   conduct and unclean hands, and without making legally required disclosures to those
18   being evicted.

19   106. As a direct and proximate result of the conspiracy of Defendants the
20   Plaintiff has been harmed and damaged as described herein, and Plaintiff thus
21   demands from the Defendants restitution in the form of actual damages, exemplary
22   damages, and legal costs, and attorney fees if Plaintiff chooses to hire counsel.

23                              **Sixth Cause of Action**

24                              **6. Civil RICO and Racketeering**

25   107. Plaintiff hereby incorporates all the allegations of paragraphs 1- 106
26   inclusive and all other paragraphs, as though the same were fully stated herein.

24

1    108. The Nevada Revised Statute 207.390 defines racketeering activity as "at
2    least two crimes related to racketeering that have the same or similar pattern, intents,
3    results, accomplices, victims or methods of commission, or are otherwise interrelated by
4    distinguishing characteristics and are not isolated incidents, if at least one of the
5    incidents occurred after July 1, 1983, and the last of the incidents occurred within five
6    years after a prior commission of a crime related to racketeering." The mortgages
7    which Defendants, in concert with other corporate Defendants, executed with the
8    Plaintiff was one of many executed in Nevada from 2004 to 2008. Defendants engaged
9    in racketeering, as prohibited by NRS 207 via the predatory and abusive lending
10   practices described herein, and the repeated failure to disclose such - both relative to
11   the Plaintiff and to other mortgagors as well. Defendants BOA  has ratified the acts and
12   omissions of CONTRYWIDE and in so doing have ratified racketeering activity.  The
13   activities of the Defendants constituted an "enterprise" with the aim and objective of the
14   enterprise being to perpetrate fraud upon the Plaintiff through the use of intentional
15   nondisclosure, material misrepresentation, and creation of fraudulent loan documents.
16   Each of the Defendants is an "enterprise Defendant."

17   109. As a direct and proximate result of the action s of the Defendants, the
18   Plaintiff has and continues to suffer damage and harm.  Plaintiff is entitled, pursuant to
19   NRS Chapter 207, to treble damages, attorneys' fees, to an Order Quieting Title, and to
20   other relief.

21                              **Seventh Cause of Action**

22                              **7. Unjust Enrichment**

23   110. Plaintiff hereby incorporates all the allegations of paragraphs 1- 109
24   inclusive and all other paragraphs, as though the same were fully stated herein.

25   111. The bonuses, inflated salaries and corporate profits which stemmed from
26   Defendants' racketeering, predatory lending, unethical and unsound and unfair lending
27   practices resulted in unjust enrichment for the Defendants.  Furthermore, the corporate
28   Defendants have received or are attempting to receive taxpayer monies, e.g., bailout
29   monies channeled through the United States Government.  The corporate Defendants

25

1   named herein have not disclosed to the United States Government the systemic fraud
2   by omission alleged herein, or the racketeering activities described herein.  Accordingly,
3   the Defendants have been unjustly enriched pursuant to the fraud, breach of contract
4   and racketeering perpetrated against Plaintiff and are compounding, or attempting to
5   compound, that'unjust enrichment via receipt of taxpayer monies.

6       112.  Upon information and belief, Defendants utilized funds received as a result
7   of the Troubled Asset Recovery Program to further the predatory, unethical and
8   actionable conduct described herein.  The improper use of thee funds constituted a form
9   of unjust enrichment and further the conspiracy alleged herein.  Some of these monies
10  were used to pay bonuses and inflated salaries and to otherwise unjustly enrich
11  Defendants, and their managers, shareholders, employees and agents.

12      113.  As a direct and proximate result of Defendants activities the Plaintiff has
13  been injured and damaged as described herein.

14                      **Eight Cause of Action**

15          **8.  Conspiracy to Commit Fraud Related to the MERS System**

16      114.  Plaintiff hereby incorporates all the allegations of paragraphs 1- 113
17  inclusive and all other paragraphs, as though the same were fully stated herein.

18      115.  Upon information and belief the corporate Defendants did knowingly
19  conspire to engage in a scheme to promote, encourage, and facilitate fraudulent and
20  predatory lending and foreclosure practices which eroded the national real estate
21  market, including the Nevada real estate market.  As a direct and proximate result the
22  national real estate market, including the real estate values in Nevada have been
23  substantially damaged and Plaintiff has thereby been harmed as alleged herein.

24      116.  Upon information and belief Defendants conspired with MERS and are or
25  have been shareholders in MERS or members of the MERS system, and have acted to
26  facilitate and further the unlawful goals of the MERS system.

26

1    117. Upon information and belief the Defendants and MERS conspired to
2  develop a system of earning profits from the origination and securitization of residential
3  loans without regard for the rights of the Plaintiff, i.e., they have engaged in predatory
4  and deceptive lending practices; they intentionally created, managed, operated and
5  controlled the MERS system for the specific purpose of designating a sham beneficiary,
6  i.e., MERS, or some other entity; the Defendants intentionally created, managed,
7  operated and controlled the MERS system with the intent of rendering the task of
8  identifying and holding responsible Defendants who engaged in predatory lending
9  practices difficult or impossible, i.e., they created and operated the MERS system to
10  further a conspiracy.

11    118. Honorable Justice Linda B. Reigle of the United States Bankruptcy Court
12  for the Nevada Region has ruled on March 31, 2009 in the case of "In Re Joshua and
13  Stephanie Mitchell," Case No. BK-S-07-16226-LBR, Chapter 7, MERS does not have
14  legal standing to order a foreclosure sale on its own or through any other Trustee. .
15  Additionally, Honorable Samuel C. Bufford, United States Bankruptcy Judge for the
16  Central District of California agrees with the comments above as indicated in his opinion
17  of October 22, 2008 in the case of Defendant Vargas in case number LA08-17036-SB.
18  MERS takes no mortgage applications, makes no loans, holds no notes, and is not a
19  party of interest in this transaction, and has no standing in court to order a foreclosure.
20  MERS has cheated many county recording departments out of millions of dollars for
21  recording fees that should have been paid for the recording of assignments, etc. The
22  MERS system operates to perform a "whitewashing effect" to cover up improperly
23  executed documents, missing documents, forged documents, and defective documents
24  in an effort to make them legal.  This is fraud on a national scale.

25    119. Additionally, the Supreme Court of both Kansas and Arkansas have
26  recently ruled that MERS does not have standing to bring about a foreclosure action.
27  See, Landmark Bank v. Kesler 2009 KAN. Lexis 834.  Also see, MERS v. Southwest
28  Homes of Arkansas, 2009 ARK. Lexis 121.

29    120. As a direct and proximate result of Defendants actions, Plaintiff has been
30  damaged as described herein.

27

**Ninth Cause of Action**

**9. Fraud by Obtaining Signature by False Pretences**

121. Plaintiff hereby incorporates all the allegations of paragraphs 1- 120 inclusive and all other paragraphs, as though the same were fully stated herein.

122. NRS 205.390 states that a person who, with intent to cheat or defraud another, designedly by color or aid of any false token or writing or other false pretense, representation or presentation obtains the signature of any person to a written instrument is guilty of a category D felony and shall be punished as provided in NRS 193.130. In addition to any other penalty, the court shall order the person to pay restitution.

123. Upon information and belief, Defendants have violated the law as it is prescribed in NRS 205.390 by obtaining Plaintiff's signature on the mortgage documents by false pretense and misrepresentation, and fraud of omission.

124. As a direct and proximate result of Defendant's unfair and illegal actions, Plaintiff has been damaged as described herein.

125. Plaintiff respectfully asks the court for an Order of Restitution of all the monies that Plaintiff has expended and for restitution of all damages Plaintiff has sustained related to the fraudulent mortgage contract that Defendants enticed Plaintiff to sign.

**Tenth Cause of Action**

**10. Injunctive Relief**

126. . Plaintiff hereby incorporates all the allegations of paragraphs 1- 125 inclusive and all other paragraphs, as though the same were fully stated herein.

127. Defendants caused Deeds of Trust to be executed and recorded which identified or substituted MERS as the "Nominee Beneficiary Only" regarding the subject property.

28

128.  At the time the Plaintiff allegedly signed the Deeds of Trust he was without knowledge that MERS previously declared to Defendants, or some of them, that MERS would never hold a beneficial interest in any Deed of Trust.  That is, the scope of MERS' declaration included the Deeds of Trust which Plaintiff allegedly executed.

129.  Defendants, or some of them, knew, and should have known, prior to the presentation of the subject Deeds of Trust that the MERS' policy was to refrain from holding a beneficial interest in either the subject Deeds of Trust or the subject property. Defendants, or some of them,  knew, or should have known that MERS' declaration to this effect was part and parcel of a conspiracy to violate public policy and the law.

130.  Notwithstanding knowledge of MERS' deceptive and predatory business practices and declaration, Defendants used false and misleading misrepresentations to Plaintiff, and failed to disclose to Plaintiff of MERS' declaration and the predatory and deceptive schemes orchestrated by MERS.  Defendants thereby intended to cause Plaintiff to rely upon their representations, implied and direct, as well as upon their silence.

131.  Plaintiff was entitled to so rely and remained uninformed of the operative. and material facts as to the identity of MERS, and the relationship between MERS and the Defendants, and the conspiracy that MERS and the Defendants created and participated in.  Plaintiff manifested this reliance by allegedly executing the Deed of Trust as well as other documents attendant to the mortgage contract.

132.  Defendants deceived Plaintiff by creating a sham beneficiary pursuant to the Deeds of Trust.  Defendants acted with illegal and actionable intent in derogation of public policy and the law.  For instance, the designation of MERS as the beneficiary was intended by Defendants to render difficult or impossible to identify the actual owner of beneficial interest holder of the Deed of Trust until such time as Defendants chose to designate the owner or beneficial interest holder pursuant to a predatory foreclosure. The designation of a sham beneficiary was intended to facilitate a possible wrongful foreclosure.  By maintaining the fiction that MERS is a properly designated beneficiary, Defendants have violated NRS 205.372 and NRS 205.395 and NRS 204.470.

29

1    133. The deception perpetrated by Defendants with regards to the Deeds of
2    Trust was part and parcel of a calculated scheme to defraud Plaintiff and other
3    Nevadans. This deception was intended to deny to Plaintiff and other Nevadans access
4    to Nevada Courts. Defendants knew of the illegality of their predatory lending schemes
5    and pursuant to the designation of a sham beneficiary, interposed a procedural
6    roadblock so as to forestall an adjudication on the merits.

7    134. Defendants are therefore estopped from relying on the Deeds of Trust. The
8    designation of MERS as a sham beneficiary was not a clerical or inadvertent error. That
9    designation is evidence of fraud and was part and parcel of a fraudulent course of
10   conduct. As a direct and proximate result of Defendants actions, Plaintiff was harmed
11   and damaged as described herein.

12   135. Plaintiff has repudiated the mortgage contracts via this lawsuit and via a
13   refusal to honor the contract through continued payments. At this time, Plaintiff
14   allegedly stands in technical default of the paper mortgage contracts and contends that
15   the contracts are null and void pursuant to the legal principles stated herein, including
16   estoppels, and pursuant to offset. That is, damages owed to Plaintiff upon being trebled
17   pursuant to Nevada's anti-racketeering statute exceed the face value of the alleged
18   promissory notes.

19   136. The subject property is an important asset of Plaintiff. Plaintiff has owned
20   the subject property since 2004. Plaintiff intends to continue to make the subject
21   property an important asset for a long indefinite period.

22   137. Plaintiff will be subject to emotional and physical trauma and will be
23   irreparably harmed if Defendants are allowed to exploit a Deed of Trust which was
24   fraudulently obtained so as to deny Plaintiff the quiet enjoyment of this property via a
25   wrongful foreclosure.

26   138. For the Court to allow Defendants to foreclose on Plaintiff's property would
27   be a violation of NRS 205.380 which prohibits the obtaining of a property by false
28   pretense.

1     139.  Furthermore, NRS 645F.440 prohibits a foreclosure where there is fraud on
2    the homeowner.  This is a case where the Defendants have perpetrated fraud on the
3    Plaintiff homeowner as described herein and the Court should not allow Defendants to
4    unjustly enrich themselves again by illegally taking Plaintiff's home through a fraudulent
5    wrongful foreclosure.

6     140.  Nevada law is now codified in NRS 589D et. Seq. and does not allow loans
7    to be made based upon stated incomes and no documentation as these loans were.
8    This type of lending practice is seen as de facto predatory in nature.  Even though
9    Defendants had the availability of IRS form 4506T which clearly indicated that Plaintiff's
10   income was not qualified for these loans, nonetheless, Defendants approved the loans
11   in a manner that Plaintiff relied upon Defendants approval and expertise.  Plaintiff was
12   entitled to rely upon Defendants' approval of the loans.

13     141.  NRS 107.085 limits the power of a Trustee to bring about a sale of real
14   property in foreclosure where there has been unfair dealing and Plaintiff respectfully
15   requests the Court to disallow the Trustee to bring a sale because of unfair dealing in
16   the subject case.

17     142.  As a direct and proximate result of Plaintiff's reliance upon Defendants'
18   actions and omissions, Plaintiff has been damaged and harmed as herein described.

19    WHEREFORE, Plaintiff respectfully requests the court to temporarily and
20   permanently enjoin Defendants from any foreclosure action, any eviction action, and
21   any further negative credit reporting action, and that Defendants would forthwith
22   remove any negative credit reports filed against Plaintiff related to this property.

23                  **Eleventh Cause of Action**

24                   **11. Declaratory Relief**

25     143.  Plaintiff hereby incorporates all the allegations of paragraphs 1- 142
26   inclusive and all other paragraphs, as though the same were fully stated herein.

31

1    144. Nevada Rules of Civil Procedure Chapter 17 give the Plaintiff the right to
2    know who the true parties of interest are pertaining to any lawsuit.

3    145. Upon information and belief Plaintiff alleges that none of the Defendants
4    are a Lender according to the definition of NRS 589D.050 which states that a Lender is
5    a holder of a note or obligation. Again, in NRS 40.506 a secured lender is defined as a
6    holder of a note. Upon information and belief Plaintiff alleges that none of the
7    Defendants are currently holder in due course of any note related to the subject
8    property. Plaintiff alleges upon information and belief that Defendants either sold the
9    notes through a securitization scheme or were only middlemen using funds other than
10   their own, and as such that all defendants are not parties of interest, and therefore have
11   no standing to bring any action in this or any court against Plaintiff related to the subject
12   property. Additionally, all notices received from Plaintiff from the Defendants are invalid
13   and null and void and of no effect since the Defendants are not parties of interest and
14   have no standing to issue such notices. Nor do Defendants have the right or authority
15   to modify any loans or the terms of any loans, or conduct any foreclosure, or conduct
16   any short sale of said property since Defendants are not currently parties of interest with
17   standing to do anything related to the Plaintiff and the subject property.

18   146. NRS 30.040 gives the Plaintiff the right to have his rights clarified by a
19   Court of law regarding the validity of the contracts allegedly executed with the
20   Defendants.

21   147. Plaintiff is a person and a property owner of Nevada according to the
22   statute NRS 30.020.

23   148. The Deed of Trust and the mortgage are a contract or an instrument
24   according to the meaning of the statute NRS 30.040.

25   149. NRS 30.030 places this type questions within the scope of this Court and
.26  the declaration of the Court shall have the force of a final judgment.

27   150. NRS 30.140 states that declarations of the Court are to be remedial in
28   nature and to settle and afford relief from uncertainty or insecurity in situations with

32

1   respect to rights, status and other legal relations, and are to be liberally construed and
2   administered.

3       151. THEREFORE, Plaintiff respectfully requests the Court to declare and issue
4   an Order that Plaintiff is the rightful owner of record of the subject property which has
5   been his home and principal residence for almost five years.

6       152. FURTHERMORE, Plaintiff respectfully requests the Court to declare and
7   issue an Order that none of the Defendants has any right, title, estate, interest, or other
8   dealing with the subject property of the Plaintiff and that Defendants would strike from
9   the record of the Clark County Recorder any reference to any Deeds of Trust and or
10   mortgages related to the subject property.

11       153. Plaintiff additionally respectfully requests the Court to issue an Order
12   requiring Defendants to remove any negative credit reports against Plaintiff related to
13   the subject property.

14                          **RELIEF SOUGHT**

15       **WHEREFORE,** having set forth numerous legally sufficient causes of action
16   against the Defendants, Plaintiff prays for the entry of Final Judgment against all the
                                                                    *exceeding $19,000 and*
17   Defendants jointly and severally, in an amount not yet quantified, but to be proven at
18   trial and such other amounts to be proven at trial, and for costs and attorneys' fees; that
19   the Court find that these transactions the subject of this action are illegal and are
20   deemed void; that the Defendants be enjoined from foreclosing on the subject property
21   and any further proceedings be enjoined; and for other and further relief which is just
22   and proper. Moreover, Plaintiff asks the Court to Temporarily and Permanently Stay
23   any action of Foreclosure and Eviction by the Defendants against the Plaintiff. Plaintiff
24   ask the Court for a Quiet Title Order to bar the Defendants forever from coming against
25   the Plaintiff related to the subject property. The Plaintiff asks the Court not only for
26   statutory damages, but also punitive damages to show an example to any other parties
27   who may hae ideas to follow in the conduct of the Defendants against the citizens of
28   Nevada. The Plaintiff asks the Court for treble damages as stated in the statutes.

33

1  Plaintiff asks the Court to remand this case back to the Nevada State Court Eighth
2  District in Las Vegas, Nevada.

3  <center>**DEMAND FOR A JURY TRIAL**</center>

4  Plaintiff demands a trial by jury of all matters so triable as a matter of right.

5

6  Respectfully submitted,

7

8  _____ date:   October 16,  2009

9  EDWARD  G.  MARSHALL, Esq.

10  Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

34



EXHIBIT "A"

1    ___INVESTOR___

2

3         $$

4         **CASH**            ("LIST OF MIDDLEMEN")       THE POOLED
5         **TO LOAN**                                      **FRACTIONALIZED NOTES**

6                        SELLER OF SECURITIZED NOTES

7                         SPECIAL PURPOSE VEHICLE

8                        CREDIT DEFAULT ORIGINATOR

9                         MOODY'S RATING SERVICE

10                          INVESTMENT BANK

11                          TRUSTEE OF POOL

12                           POOL OF NOTES

13                        CREDIT DEFAULT SWAPS

14                             INSURANCE

15                         AGGREGATOR OF NOTES

16                ASSIGNMENT AND ASSUMPTION OF NOTES

17                        DESCRIPTION OF ASSETS

18   **CASH TO LOAN**              PRETENDER LENDER

19                               TRUSTEE

20                              BENEFICIARY

21              $$                              **THE NOTE**
22              _"UNWARY BORROWER"_

23   THERE ARE ONLY 2 PARTIES OF INTEREST IN EACH TRANSACTION, THE INVESTOR
24   AND THE BORROWER.  ONLY THE INVESTOR & THE UNWARY BORROWER ARE
25   PARTIES OF INTEREST.  ALL OTHERS ARE MIDDLEMEN WITHOUT AN INTEREST
26   WHO ONLY PERFORM A SERVICE FOR A FEE AND TAKE A PROFIT.

35

SUM/JT

# District Court
## CLARK COUNTY, NEVADA

**FILED**

OCT 1 6 2009

CLERK OF COURT

ANDREA G. SANTEL,

Plaintiff,

vs.

RECONTRUST COMPANY,

BANK OF AMERICA,

COUNTRYWIDE HOME LOANS,

MORTGAGE ELECTRONIC
  REGISTRATION SYSTEMS, INC.,

Defendants.

Case No.  A-09-603879-C

Dept. No.  X

JARED K. HOHENBERG
Certified Process Server
X 0 Judicial Circuit
ID # 97-5-2
Date 11/16/09 Time 2:00 pm
Served Jeff Ogden

**SUMMONS**

NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.

TO THE DEFENDANT(S): A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

    1. If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:
        a. File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.
        b. Serve a copy of your response upon the attorney whose name and address is shown below.

    2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

    3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

    4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators, each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted by:

Edward G. Marshall

    (Signature)

Name:  EDWARD G. MARSHALL
Address:  324 So. Third St. #2
City/State/Zip: Las Vegas, NV 89101
Telephone:  702/384-7162
Attorney for:  Plaintiff

CLERK OF COURT

ALYSE HAMILTON

By: _____

    Deputy Clerk.

OCT 1 6 2009

Date

DISTRICT COURT SEAL

REGIONAL JUSTICE CENTER
200 Lewis Ave.
Las Vegas, NV 89155

NOTE: When service is by publication, add a brief statement of the object of the action.
    See Rules of Civil Procedure 4(b).

Revised 7/99/jh

FILED

OCT 1 6 2009

*[signature]*
CLERK OF COURT

1  EDWARD G. MARSHALL

2  324 S. Third Street #2

3  Las Vegas, NV 89101

4  TEL (702) 384-7162  FAX (702) 3846584

5  ATTORNEY FOR PLAINTIFF

6                        DISTRICT COURT

7                    CLARK COUNTY NEVADA

8                                     )   CASE NO: A-09-601879-C

9                                     )   DEPT. NO.        X

10  ANDREA G. SANIEL                  )

11        PLAINTIFF                   )   DATE OF HEARING: _____

12  VS.                              )   TIME OF HEARING: _____

13  RECONTRUST COMPANY               )

14  BANK OF AMERICA                  )

15  COUNTRYWIDE HOME LOANS           )   NOTICE  OF  LIS  PENDENS

16  MORTGAGE ELECTRONIC REGISTRATION )

A – 09 – 601879 – C
465787

*[barcode]*

17     SYSTEMS, INC.                 )

18        DEFENDANTS

19

20  _____ )

21

RECEIVED

OCT 1 6 2009

CLERK OF THE COURT

NOTICE OF LIS PENDENS

TO ALL WHOM IT MAY CONCERN:

PLEASE TAKE NOTICE that an action at law has been commenced in the above entitled court by the Plaintiff against the Defendant     and that said suit is now pending.

The object of said action is to quiet the title of Plaintiff     against all persons and claims who allege any contrary interest therein.

Legal relief has been sought in said suit as pertains to certain real property and which affects the right, title and interest in and to said property.

The property so affected by this suit is described as follows:  APN  161-10-512 also known as 6507 Coronado Canyon Avenue, Las Vegas, NV 89142 and further described as Lot 13, Block 2, Bonita Hills, as shown by map on file in Book 113 of Plats, Page 4 of Official Records of the Clark County Recorder.

DATED THIS 16th DAY OF October____, 2009 .

_Edward J Marshall_
EDWARD G. MARSHALL
Attorney for Plaintiff
324 South Third Street #2
Las Vegas, Nevada 89101